FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 15, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON F.,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. 2:17-CV-00228-JTR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 22, 23. Attorney Cathy M. Helman represents Jason F. (Plaintiff); Special Assistant United States Attorney Justin L. Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on December 3, 2013, Tr. 144-45, alleging disability since July 15, 2008, Tr. 310, 312, due to a ruptured disc, anxiety, and

mental problems, Tr. 391. The applications were denied initially and upon reconsideration. Tr. 204-07, 209-12. Administrative Law Judge (ALJ) Marie Palachuk held a hearing on January 21, 2016 and heard testimony from Plaintiff, psychological expert Nancy Lynn Winfrey, Ph.D., medical expert Allan N. Levine, M.D., and vocational expert Daniel McKinney. Tr. 47-95. The ALJ issued an unfavorable decision on February 17, 2016. Tr. 23-37. The Appeals Council denied review on April 27, 2017. Tr. 1-6. The ALJ's February 17, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on June 20, 2017. ECF Nos. 1, 7.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 31 years old at the alleged date of onset. Tr. 310. His highest level of education was the tenth grade. Tr. 392, 645. He reported his work history as cashier, cook, customer service representative, security guard, and test driver. Tr. 392, 398. Plaintiff reported that he stopped working on September 15, 2012 due to his conditions. Tr. 391.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put

another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097.

If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 17, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 15, 2008, the alleged date of onset. Tr. 25.

At step two, the ALJ determined Plaintiff had the following severe impairments:  chronic back pain secondary to multilevel degenerative disc disease; morbid obesity; major depressive disorder; and generalized anxiety disorder.  Tr. 26.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 26.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> the claimant is limited to lifting/carrying a maximum of 15 pounds and standing/walking limited to 30 minutes at a time for a total of five hours per day (requiring the ability to alternate sitting/standing at 30 minute intervals).  The claimant is limited to occasional postural activities with the exception of no climbing of ladders, ropes and scaffolds; avoid concentrated exposure to extreme cold and all exposure to hazards such as dangerous moving machinery and unprotected heights.  The claimant is able to maintain attention/concentration for two-hour intervals during a regular 40-hour workweek; no production rate (fast-paced assembly-type work); no high pressure/confrontation type job (e.g., customer service/disputes, collection, etc.); no crowds; only occasional interaction with coworkers/supervisors.

Tr. 28.  The ALJ identified Plaintiff's past relevant work as store cashier, laborer stores, electronics tester, cook helper, hand packager, and customer-service clerk (CST) and concluded that Plaintiff was not able to perform this past relevant work.  Tr. 35.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of bagger, garment sorter, and table worker. Tr. 36. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 15, 2008, through the date of the ALJ's decision. Tr. 37.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the opinion evidence, (2) failing to properly address Plaintiff's symptom statements, and (3) failing to make a proper step five determination.

## DISCUSSION

### 1. Opinion Evidence

Plaintiff argues that the ALJ failed to properly consider and weigh the opinions expressed by William M. Shanks, M.D., Benjamin W. Simpson, M.D., Wilfred Madarang, M.D., Mahlon Dalley, Ph.D., Frank Rosekrans, Ph.D., Jay M. Toews, Ed.D., Nancy Lynn Winfrey, Ph.D., Allan N. Levine, M.D., and Helen Franklin. ECF No. 14 at 22 at 12-20.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the

opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

## A.   William M. Shanks, M.D.

On July 12, 2012, Dr. Shanks completed an examination of Plaintiff at the request of the Washington Department of Social and Health Services (DSHS) and diagnosed Plaintiff with widespread degenerative disk disease of the lumbar spine with facet joint arthritis and a history of left lateral disc herniation at the LS level, status post-op discectomy at this level. Tr. 582-85. Dr. Shanks completed his evaluation with the following statement:

> He has no training in a sedentary level occupation, except for that which he did in a call center several years ago. He would not be able to return

to the heavier types of work he has done in the past. He therefore does not appear capable of employment at this point.

Tr. 585. He also completed a form for DSHS opining that Plaintiff could sit for most of the day, could lift a maximum of ten pounds, and could frequently lift two pounds. Tr. 580-81. The ALJ gave the opinion "little weight" for three reasons: (1) it was a DSHS evaluation, (2) Dr. Shanks is not a vocational expert, but his opinion contained vocational matters, and (3) it was inconsistent with the assessments of Dr. Levine, Dr. Madarang, and the State agency medical consultants. Tr. 33-34.

The ALJ's first reason for rejecting the opinion, that it was a DSHS evaluation, is not legally sufficient. The ALJ stated that as a preliminary matter, she "assigns less weight to DSHS evaluations because DSHS uses different regulations to determine an applicant's eligibility for benefits, and the evaluations conducted for DSHS are largely based on the claimant's self-reported symptoms and complaints while the claimant is not fully credible in this case." Tr. 33. This is legally insufficient for two reasons: First, while the ALJ is accurate that DSHS uses different rules to establish eligibility for benefits, she is not required to adopt this agency's conclusion. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, she is required to consider the underlying medical opinion that the agency's conclusion is based upon. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the two agencies' rules may be different, it is not always apparent that these differences affect a particular physician's report without further analysis by the ALJ. There may be situations where less weight should be assigned to a DSHS medical opinion based on the differences in the rules, but substantial evidence does not support that finding here. Dr. Shanks' opinion addressed discrete functional abilities that are separate from the agency's conclusions: Plaintiff could sit for most the day, could lift a maximum of ten pounds, and could frequently lift two pounds. Tr. 580. The different regulations used by the different agencies have no effect on the functional

limitations opined. Therefore, this is not a specific and legitimate reason for rejecting DSHS medical reports.

Second, the blanket conclusion that DSHS evaluations are largely based on a claimant's self-reported symptoms, is not consistent with Ninth Circuit case law. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must provide the basis for her conclusion that the opinion was more heavily based on a claimant's self-reports than the medical evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the fact that an opinion was penned at the request of an agency is not a sufficient basis for the ALJ's conclusion that the opinion was based on Plaintiff's self-reports under *Ghanim*. Therefore, the mere fact that the opinion was part of Plaintiff's application for DSHS benefits is not a specific and legitimate reason to reject it.

The second reason for rejecting Dr. Shanks' opinion, that he opined on vocational matter without expertise in that area, is not a specific or legitimate reason to reject the opinion. The statement at the end of Dr. Shanks' evaluation, addressing Plaintiff's past work and finding that Plaintiff did not appear capable of work, Tr. 585, does address vocational issues and the ultimate issue of disability. Whether or not a claimant is disabled is an issue reserved for the ALJ and is, therefore, not a medical opinion and not due any special significance. 20 C.F.R. §§ 404.1527(d); 416.927(d). While Dr. Shanks' conclusory statement at the end of his evaluation may address vocational issues and the ultimate issue of disability, it does not negate his functional opinion contained on the DSHS form, which addressed Plaintiff's ability to stand and lift. Tr. 580. Therefore, this is not a legally sufficient reason to reject the functional portion of Dr. Shanks' opinion.

The ALJ's third reason for rejecting Dr. Shanks' opinion, that it is inconsistent with the assessments of Dr. Levine, Dr. Madarang, and the State

agency consultants, meets the specific and legitimate standard. An ALJ may reject an opinion because it conflicts with another physician's examination. *Batson*, 359 F.3d at 1195. Dr. Levine was the medical expert who testified at Plaintiff's hearing. Tr. 51-66. He and the State agency medical consultants are considered nonexamining opinions. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 *citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the ALJ also found that Dr. Shanks' opinion was inconsistent with that of Dr. Madarang. Tr. 34. Dr. Madarang was an examining physician who provided an opinion limiting Plaintiff to light work. Tr. 552-56. Therefore, the ALJ did not rely on the opinions of nonexamining physicians alone in rejecting Dr. Shanks' opinion. As such, this third reason meets the specific and legitimate standard.

## B. Benjamin W. Simpson, M.D.

On November 25, 2015, Dr. Simpson completed a medical source statement opining that Plaintiff could frequently lift up to ten pounds, occasionally lift and/or carry eleven to twenty pounds. Tr. 815. Plaintiff could sit at one time for eight hours, stand at one time for two hours, and walk at one time for three hours. Tr. 816. Plaintiff could bilaterally reach overhead and push/pull occasionally and reach and finger continuously. Tr. 817. Plaintiff could continuously operate foot controls bilaterally. *Id*. He could occasionally climb stairs, ramps, ladders, or scaffolds and was precluded from stooping, kneeling, crouching, and crawling. Tr. 818. His exposure to unprotected heights was limited to occasional and all remaining environmental considerations were without limitations. Tr. 819. Dr. Simpson stated that these limitations have lasted or will last for twelve consecutive months. Tr. 820. The ALJ gave "some weight" to the lift/carry limitations opined by Dr. Simpson and "little weight" to the remainder of the opinion. Tr. 34. The ALJ supported the weight provided with two reasons: (1) there was no evidence to

support any right upper extremity limitations and (2) the opinion was inconsistent with that of Dr. Levine and Dr. Madarang.  Tr. 35.

The ALJ's first reason, that there were no objective findings to support any ongoing right upper extremity limitations, meets the specific and legitimate standard.  Plaintiff concedes that the right sided limitations are unsupported, but argues that this only affects the reliability of Dr. Simpson's opinion as to the limitations on Plaintiff's right side.  ECF No. 22 at 16.  The Court disagrees.  The fact that a source would opine limitations that are unsupported by the record and his own treatment notes calls the reliability of the entire opinion into question.  *See Batson*, 359 F.3d at 1195 (inconsistency with the majority of the objective evidence is a specific and legitimate reason for rejecting an opinion).

The ALJ's second reason for assigning Dr. Simpson's opinion less weight, that it was inconsistent with the opinions of Dr. Levine and Dr. Madarang, meets the specific and legitimate standard.  As discussed above, an opinion's inconsistency with other opinions in the record is a legally sufficient reason to reject it.  Furthermore, Plaintiff only challenges this reason by asserting that the opinions of nonexamining providers do not constitute substantial evidence in rejecting the opinion of examining providers.  ECF No. 22 at 14 *citing Lester*, 81 F.3d at 831.  However, Dr. Madarang was an examining provider.  Therefore, Plaintiff's reliance on *Lester* is misplaced.

The ALJ did not error in his treatment of Dr. Simpson's opinion.

**C.  Wilfred Madarang, M.D.**

Dr. Madarang examined Plaintiff on February 27, 2013 and completed an evaluation form for DSHS.  Tr. 539-41, 552-56.  He diagnosed Plaintiff with disc degeneration in the lumbar spine, chronic knee pain, and arthralgia of the left hip.  Tr. 553.  He limited Plaintiff to light work and estimated that this limitation would persist with available medical treatment for six to nine months.  Tr. 541, 554.  The ALJ gave the opinion "significant weight," stating that Dr. Madarang had the

opportunity to examine Plaintiff, that his opinion was well supported by the objective medical evidence, and that the opinion was consistent with the testimony of Dr. Levine.  Tr. 33.

Plaintiff challenges the ALJ's determination giving controlling weight to Dr. Madarang's opinion.  ECF No. 22 at 17-18.  He argues that the ALJ was inconsistent: First the ALJ rejected other opinions in the record because they were generated in the pursuit of DSHS benefits, yet she accepted Dr. Madarang's opinion, which was also generated in the pursuit of DSHS benefits; second, the ALJ rejected other examining physicians' opinions because they were only examining physicians, yet she accepted Dr. Madarang's opinion citing his status as an examining physician.  *Id*.  The ALJ is not required to provide "sufficient reasons" for according weight to a medical professional, rather the Court reviews whether the ALJ has provided legally sufficient reasons for rejecting evidence.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993).  Accordingly, Plaintiff's argument with respect to Dr. Madarang's opinion is without merit.

### D.    Mahlon Dalley, Ph.D.

On March 25, 2013, Dr. Dalley completed a psychological evaluation of Plaintiff at the request of DSHS.  Tr. 532-37.  He diagnosed Plaintiff with major depressive disorder, recurrent and generalized anxiety disorder.  Tr. 533.  He opined that Plaintiff had a severe limitation in three basic work activities and a marked limitation in two additional basic work activities.  Tr. 534.  The ALJ gave Dr. Dalley's opinion "little weight" for four reasons: (1) it was a DSHS evaluation, (2) it was a check-the-box form, (3) it was inconsistent with the record, and (4) it was inconsistent with the opinions of Dr. Winfrey, Dr. Toews, and the State agency medical consultants.  Tr. 34.

The ALJ's first reason for rejecting the opinion, that it was a DSHS evaluation, fails to meet the specific and legitimate standard.  The ALJ found that DSHS evaluations are assigned less weight because DSHS uses different

regulations, the evaluations are largely based on the claimant's self-reported symptoms, and claimants have an incentive to overstate symptoms and complaints. Tr. 34. The ALJ's first two of these three assumptions regarding DSHS evaluations, that they are premised on different regulations and based on the claimant's self-reports, were the same blanket reasons for rejecting Dr. Shanks' opinion, and are not specific and legitimate. *See supra.* The third assumption the ALJ made about DSHS opinions, that claimants have an incentive to overstate their limitations for the receipt of benefits, is not supported by substantial evidence. Dr. Dalley specifically stated that Plaintiff's "motivation appeared appropriate and the test results are believed to be a good indication of his current cognitive and psychological functioning." Tr. 535. Dr. Dalley administered the Minnesota Multiphasic Personality Inventory (MMPI-2) and concluded that the validity indicators suggested that Plaintiff's profile was valid. Tr. 537. Therefore, any finding that Plaintiff was misrepresenting the severity of his impairments for the receipt of benefits during Dr. Dalley's evaluation is not supported by the record. The fact that Dr. Dalley's evaluation was a DSHS evaluation is not a legally sufficient reason to reject it.

The ALJ's second reason for rejecting Dr. Dalley's opinion, that it was contained on a check-the-box form, does not meet the specific and legitimate standard. The Ninth Circuit has expressed a preference for narrative opinions over opinions expressed on a check-the-box form. *See Murray*, 722 F.2d at 501. However, check-the-box forms that do not stand alone, but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, there are not hundreds of pages of treatment records in support of Dr. Dalley's check-the-box form as there were in *Garrison*, however, there is a mental status examination, a clinical interview, and psychological testing. Tr. 532-37. The ALJ did not find Dr. Dalley's report inconsistent with his opinion.

Therefore, the fact that the opinion was expressed on a check-the-box form is not a sufficient reason to reject it.

The ALJ's third and fourth reasons for rejecting the opinion, that it was inconsistent with Plaintiff's reports throughout the record and inconsistent with the opinions of Dr. Winfrey, Dr. Toews, and the State agency medical consultants, meet the specific and legitimate standard. An ALJ may reject an opinion because it is inconsistent with other statements and assessments of the claimant's medical condition. *Batson*, 359 F.3d at 1195. The ALJ found that Plaintiff's own reports of mild mental health symptoms to other providers throughout the record were inconsistent with the severity of impairments opined by Dr. Dalley. Tr. 34. She cited five locations in the record in which Plaintiff reported improvement in his psychiatric symptoms, Tr. 593-94, 682, a lack of symptoms, Tr. 678, or Depression and Anxiety Scales showing minimal symptoms, Tr. 674, 676. It is reasonable for the ALJ to question the reliability of Dr. Dalley's evaluation considering Plaintiff failed to consistently allege the level of severity of symptoms that Dr. Dalley opined as present. Furthermore, Plaintiff does not challenge the ALJ's finding that his statements were inconsistent with Dr. Dalley's evaluation. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (The Court need not address issues not specifically raised in briefing).

Plaintiff challenges the ALJ's finding that the opinions were inconsistent with the opinions of Dr. Winfrey, Dr. Toews, and the State agency medical consultants. ECF No. 22 at 14. However, his challenge only addresses the opinion's inconsistency with nonexamining providers. *Id*. Dr. Winfrey and the State agency medical consultants are nonexamining providers. Plaintiff is accurate that the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating physician. ECF No. 22 at 14 *citing Lester*, 81 F.3d at 831. However, Dr. Toews is an examining source, and the ALJ relied upon his opinion when rejecting

Dr. Dalley's opinion.  Therefore, the ALJ is not relying on nonexamining sources alone.  The ALJ has provided a legally sufficient reason to reject Dr. Dalley's opinion.

### E.    Frank Rosekrans, Ph.D.

Dr. Rosekrans completed a psychological evaluation for DSHS on January 20, 2014.  Tr. 645-53.  He diagnosed Plaintiff with major depressive disorder, single episode, mild and generalized anxiety disorder.  Tr. 646.  He opined that Plaintiff had a marked limitation in four basic work activities and a moderate limitation in two additional basic work activities.  Tr. 647.  He stated that Plaintiff would be impaired with available treatment for sixty months.  *Id*.  The ALJ gave Dr. Rosekrans' opinion "little weight" for three reasons:  (1) it was a DSHS opinion; (2) it was inconsistent with the medical records; and (3) it was inconsistent with the assessments of Dr. Winfrey, Dr. Toews, and State agency medical consultants.  Tr. 34.

The ALJ's first reason for rejecting Dr. Rosekrans' opinion, that it was a DSHS evaluation, fails to meet the specific and legitimate standard.  The ALJ assigned less weight because DSHS uses different regulations, the evaluations are largely based on the claimant's self-reported symptoms, and claimants have an incentive to overstate symptoms and complaints in DSHS evaluations.  Tr. 34.  These three reasons are identical to those used to reject the opinion of Dr. Dalley, and, as discussed at length above, are not sufficient to support the ALJ's rejection of the opinion.  *See supra*.  Here, like in the case of Dr. Dalley's opinion, the ALJ's conclusion that Plaintiff was overstating his symptoms is not supported by substantial evidence because Dr. Rosekrans found he had a valid score on the Personality Assessment Inventory.  Tr. 646.

The ALJ's second and third reasons for rejecting Dr. Rosekrans' opinion, that it was inconsistent with the medical evidence and the opinions of Dr. Winfrey, Dr. Toews, and State agency medical consultants, are legally sufficient.  The ALJ

relies on the same reports of mild mental health symptoms relied upon in the rejection of Dr. Dalley's opinion and also cites to mild mental status findings throughout the record. Tr. 34. An ALJ may reject an opinion because it is inconsistent with the objective medical evidence, including other physicians' examinations. *Batson*, 359 F.3d at 1195. The ALJ relied on Dr. Madarang's observation that Plaintiff had "[n]o unusual anxiety or evidence of depression" at the time of his February 27, 2013 evaluation. Tr. 34 (*citing* Tr. 540). The ALJ also relied upon Dr. Madarang's June 14, 2013 evaluation finding that Plaintiff was "not anxious, and does not have suicidal ideation." Tr. 34 (*citing* Tr. 594). However, it appears the ALJ overlooked records from the same day showing that Plaintiff had moderate depressive symptoms on the PHQ-9 Depression Scale. Tr. 591. The ALJ also relied upon Dr. Madarang's normal observations on June 27, 2013, July 3, 2013, and September 13, 2013. Tr. 34 (*citing* Tr. 601, 608, 612). However, at Plaintiff's follow up with Shannon Dickens on June 27, 2013, September 6, 2013, and September 27, 2013, he continued to have moderate and severe scores on his PHQ-9 Depression Scale. Tr. 604, 609, 614. Plaintiff asserts that the record supports Dr. Rosekrans' opinion. ECF No. 22 at 17. The evidence in the record is conflicting. The evidence cited by the ALJ supports her determination, and the evidence cited by Plaintiff supports Dr. Rosekrans' opinion. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the Court will not disturb the ALJ's determination that the medical evidence in the file did not support Dr. Rosekrans' opinion.

Plaintiff also challenges the ALJ's finding that the opinion was inconsistent with that of Dr. Winfrey, Dr. Toews, and the State agency medical consultants. ECF No. 22 at 14. However, his challenge only addresses Dr. Rosekrans' opinion's inconsistency with nonexamining providers. Here, Dr. Winfrey and the State agency medical consultants are nonexamining providers. Plaintiff is correct

that the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating psychologist. ECF No. 22 at 14 *citing Lester*, 81 F.3d at 831. However, Dr. Toews is an examining source who the ALJ relied upon when rejecting Dr. Rosekrans' opinion. *See* Tr. 34. The ALJ did not rely on nonexamining sources alone. As such, the ALJ has provided a legally sufficient reasons to reject Dr. Rosekrans' opinion.

### F.    Jay M. Toews, Ed.D.

On February 27, 2014, Dr. Toews completed a consultative examination of Plaintiff at the request of the Disability Determination Services (DDS). Tr. 633-38. He diagnosed Plaintiff with a mood disorder and an anxiety disorder. Tr. 637. He also found that Plaintiff had probable dependent traits. *Id*. In his summary, Dr. Toews stated that Plaintiff "appears poorly motivated to consider employment or employment training." *Id*. He opined that Plaintiff functions in the low average to average range of intelligence, had no mood or affective barriers to employability, could remember multi-step instructions and detailed instructions, could have at least superficial interactions with coworkers and supervisors, and may have moderate difficulties interacting with the general public. *Id*. The ALJ gave this opinion some weight, but gave controlling weight to the opinion of Dr. Winfrey. Tr. 33.

Plaintiff challenges the weight the ALJ assigned to Dr. Toews' opinion based on his credentials. ECF No. 22 at 18-19. He argues that Dr. Toews is not qualified to be a psychological consultant under 20 C.F.R. § 404.1616(d). *Id*. A psychological consultant "is a member of a team that makes disability determinations in a State agency (see § 404.1615), or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(c). Disability determinations at the initial and reconsideration levels are made by a State agency. *See* 20 C.F.R. §§

404.930(a) (reconsideration denials can be appealed to an ALJ); 404.1503 (State agencies make disability determinations for the Commissioner). Therefore, the psychological consultants would have been Dan Donahue, Ph.D. and James Bailey, Ph.D., who reviewed Plaintiff's file at the initial and reconsideration levels, respectively. Tr. 152, 163, 176, 188.

Dr. Toews completed a consultative examination of Plaintiff at the request of the State agency. Tr. 633. "A consultative examination is a physical or mental examination or test purchased for you at our request and expense from a treating source or another medical source." 20 C.F.R. §§ 404.1519, 416.919. Regulations require that a consultative examiner be a "qualified medical source." 20 C.F.R. §§ 404.1519g, 416.919g. Qualified is defined as licensed in the state at the time of the exam. 20 C.F.R. §§ 404.1503a, 404.1519g, 416.903a, 416.919g. A medical source is defined as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. §§ 404.1502(d), 416.902(d).

Plaintiff's challenge of Dr. Toews' opinion under 20 C.F.R. § 404.1616(d) fails because Dr. Toews is not presented as a psychological consultant. Dr. Toews is presented as a consultative examiner. Plaintiff did assert that "there [is] no evidence that he possesses a doctorate degree in psychology or [is] listed in any national register of health service providers in psychology." ECF No. 22 at 18. As a consultative examiner, Dr. Toews was required to be a "qualified medical source." However, Plaintiff failed to object to Dr. Toews' evaluation at the ALJ hearing. *See* Tr. 49 (Plaintiff presented no objections to the exhibits being entered into the record). Additionally, Plaintiff did not raise the issue in any of his briefing before the ALJ or before the Appeals Council. Tr. 260-64, 447-58. Therefore, Plaintiff waived any challenge to Dr. Toews' status as a consultative examiner. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (When a claimant is represented by counsel, claimants must raise all issues and evidence at their

administrative hearings in order to preserve them on appeal."). Therefore, the Court will not disturb the weight the ALJ assigned to Dr. Toews' opinion.

### G. Nancy Lynn Winfrey, Ph.D. and Allan N. Levine, M.D.

Dr. Winfrey and Dr. Levine testified at Plaintiff's hearing. Tr. 51-75. Each provided a residual functional capacity opinion consistent with the ALJ's residual functional capacity determination. *Id.* The ALJ gave these opinions significant weight because Dr. Winfrey and Dr. Levine had an awareness of all the medical records, they had knowledge of the Social Security disability programs, they were specialists in their fields, and their opinions were well supported. Tr. 32-33. Plaintiff challenges the weight provided to these opinions asserting that the ALJ used boilerplate language when assigning more weight to these opinions. ECF No. 22 at 19. There is no requirement that the ALJ provide "sufficient reasons" for according weight to a medical professional, rather the Court reviews whether the ALJ has provided legally sufficient reasons for rejecting evidence. *Garrison*, 759 F.3d at 1020. Plaintiff failed to show that the ALJ erred in weighing the opinions of Dr. Shanks, Dr. Simpson, Dr. Dalley, and Dr. Rosekrans. *See supra.* The Court will not disturb the weight provided to Dr. Winfrey's and Dr. Levine's opinions.

### H. Helen Franklin

On January 20, 2016, Ms. Franklin, a Certified Peer Counselor, wrote a letter addressing her friendship with Plaintiff and what she had witnessed regarding his impairments and symptoms. Tr. 445. The ALJ rejected the statements made in the letter because Ms. Franklin did not have a treating relationship with Plaintiff and her statements were unsupported by the objective medical evidence. Tr. 35.

Ms. Franklin is a Certified Peer Counselor, which is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a). Therefore, she is considered an "other source." An ALJ is required to consider evidence from "other sources," 20 C.F.R. §§ 404.1527(f), 416.927(f), "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must

give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff challenges the ALJ's rejection of Ms. Franklin's statements by asserting that "[t]he ALJ provided no reason other than she did not believe [Plaintiff]." ECF No. 22 at 20. This assertion is inaccurate. The ALJ provided two reasons specific to Ms. Franklin's statements: (1) that Ms. Franklin did not have a treating relationship with Plaintiff and (2) that the opinion was unsupported by the objective medical evidence. Tr. 35. Plaintiff failed to challenge these reasons. ECF No. 22 at 20. As such, the Court is not required to address them. *See Carmickle*, 533 F.3d at 1161 n.2.

### J.      Harmless Errors

The ALJ provided at least one reason that meets the required standard for rejecting each opinion from Dr. Shanks, Dr. Dalley, and Dr. Rosekrans. Therefore, any error resulting from these legally insufficient reasons would be harmless. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). The ALJ's treatment of the opinion evidence did not amount to harmful error.

### 2.      Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were less than fully credible. ECF No. 22 at 3-12.

It is generally the province of the ALJ to make determinations regarding the credibility of claimant's statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what

testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements to be less than fully credible concerning the alleged intensity, persistence, and limiting effects of his symptoms. Tr. 29. The ALJ reasoned that Plaintiff's statements were less than fully credible because (1) they were not supported by the medical evidence, (2) they were inconsistent with his reported activities, (3) they were inconsistent with his statements, (4) there was evidence of motivation for secondary gain, and (5) they were inconsistent with his noncompliance with treatment.

### 1.   Medical Evidence

The ALJ's first reason for finding Plaintiff's symptom statements less then fully credible, that his reported symptoms were not supported by medical evidence, meets the specific, clear, and convincing standard.

Although it cannot serve as the sole reason for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ provided citations to the record supporting her determination that Plaintiff's reported symptoms from physical and mental impairments were not supported by the medical evidence. Tr. 29-30 (Finding that a totality of the record does not support Plaintiff's statements regarding physical symptoms, including imaging reports and physical examinations); 30-31 (summarizing evidence that his mental health impairments improved with medication and evaluations were within normal limits). Plaintiff argues that the ALJ ignored evidence supporting the severity of his reported symptoms. ECF No. 22 at 4-10. He cites to medical records that support the severity of symptoms he alleges, and asserts that the evidence the ALJ cited were are merely "scattered episodes where [Plaintiff] had good days." *Id*. Here, there is evidence to support the ALJ's determination that

Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence, and there is medical evidence to support Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. The ALJ's interpretation of the evidence is a reasonable one, and it is not the Court's role to second-guess it. *See Tackett*, 180 F.3d at 1097; *Sprague,* 812 F.2d at 1230.

## 2. Reported Activities

The ALJ's second reason for finding Plaintiff's symptom statements less than fully credible, that Plaintiff's reported activities were inconsistent with his alleged limitations, meets the specific, clear, and convincing standard.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ found that Plaintiff "described daily activities that are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations." Tr. 32. More specifically, the ALJ found that Plaintiff's "odd jobs" and being paid "under the table" demonstrated he was more capable than alleged. *Id.* She found Plaintiff's reported severity of concentration and cognitive issues was inconsistent with his reported ability to play card games on a daily basis, play video games, watch movies, and tinker with fixing computers. *Id.* She found Plaintiff's reported severity of back pain was inconsistent with his reported walks,

exercise, bike riding, and working at the Union Gospel Mission unloading boxes/accepting donations.  *Id*.

Plaintiff argues that the ALJ failed to show transferability to work activity under *Orn*.  ECF No. 22 at 11.  The Court in *Orn* provided two ways to show that a claimant's activities undermine his symptom statements:  (1) showing that a claimant's activities contradict his other testimony; or (2) showing that a claimant's activities are transferable to a work setting.  495 F.3d at 639.  Here the ALJ specifically found that Plaintiff's activities were inconsistent with his other testimony.  Tr. 32 (He "described daily activities that are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations.").  Therefore, she was not required to make any findings as to the transferability to work activity.

Here, the ALJ provided citations to specific activities the Plaintiff reported performing and found them inconsistent with portions of Plaintiff's testimony.  Tr. 32.  Therefore, this reason meets the specific, clear and convincing standard.

### 3.    Inconsistent Statements

The ALJ's third reason for finding Plaintiff's symptoms statements less than fully credible was that Plaintiff made inconsistent statements to his providers.  Tr. 30, 32.

The ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid."  *Smolen*, 80 F.3d at 1284.

Here, the ALJ found that Plaintiff's reports to DSHS examiners regarding the severity of his symptoms were inconsistent with his reports to his treating providers.  Tr. 30.  Specifically, the ALJ provided repeated examples of Plaintiff reporting mild mental health symptoms, but she failed to state how these statements were inconsistent with Plaintiffs' presentations to DSHS examiners.  *Id*.  Therefore, these statements do not have the specificity required to meet the

specific, clear and convincing standard.

Later in the decision, the ALJ found that Plaintiff's testimony that he had not worked at all since 2012, Tr. 77, was inconsistent with statements that he was working at the back dock of the Union Gospel Mission accepting donations, Tr. 674, he was working the graveyard shift, Tr. 676, and that he was doing odd jobs for a friend, Tr. 831. Tr. 32. This finding of inconsistent statements is specific enough to meet the specific, clear and convincing standard.

### 4. Secondary Gain

The ALJ's fourth reason for finding Plaintiff's symptoms statements unreliable, that Plaintiff was motived by secondary gain, meets the specific, clear and convincing standard.

The Ninth Circuit has held that a claimant's motivation and the issue of secondary gain may be considered by an ALJ when rejecting symptom testimony. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). In *Matney o/b/o Matney v. Sullivan*, the Ninth Circuit found that "set[ting] out specific findings which were supported by the record, *i.e.* . . . [the claimant]'s testimony regarding his daily activities, his demeanor and appearance at the hearing, as well as his well documented motivation to obtain social security benefits," was sufficient to support a rejection of Plaintiff's symptom statements. 981 F.2d 1016, 1020 (9th Cir. 1992).

Here, the ALJ cited to four records which referenced motivation of secondary gain, Tr. 31-32: (1) On March 1, 2014, Dr. Toews found that Plaintiff "appears poorly motivated to consider employment or employment training." Tr. 637; (2) On September 25, 2014, Plaintiff initiated services at Frontier Behavioral Health (FBH) "because his attorney told him he needed to be seen at FBH in order to get SSI." Tr. 768; (3) On October 22, 2014 Plaintiff reported to his provider that he "doesn't want to do anything (work) that my hurt my Social Security case." Tr. 766; and (4) On December 9, 2014, Plaintiff admitted to his provider at he "is

avoiding doing volunteer work as he feels it may effect his SSI outcome." Tr. 758.

The ALJ provided repeated examples of Plaintiff being motivated by reasons not related to improvement in his functional abilities. Therefore, this reason meets the specific, clear and convincing standard.

### 5.    Noncompliance with Treatment

The ALJ's fifth reason for finding Plaintiff's symptom statements less than fully credible, that his alleged severity of symptoms was inconsistent with his noncompliance with treatment, meets the specific, clear and convincing standard.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment casts doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

Here, the ALJ found that Plaintiff refused to attend vocational rehabilitation training and group therapy. Tr. 32. He canceled or failed to show up for five of his physical therapy appointments. *Id.* Plaintiff alleges that he was not noncompliant. ECF No. 22 at 10. He asserts that he experienced a lapse in treatment between 2012 and 2013 due to financial constraints and that he took a break in mental health counseling in March 2015 to focus on his physical issues. *Id.* at 10-11. However, the ALJ's findings do not pertain to these periods and are not limited to his mental health treatment. The ALJ first referenced an October 2014 treatment note in which Plaintiff missed group therapy, referred to as "class," because he fell asleep and that he planned on missing another class because it was his birthday and he was going to have lunch with his brother. Tr. 766. The counselor stated that Plaintiff was "reluctant to attend classes since he does not believe they will be helpful to him." *Id.* She also suggested he attend vocational rehabilitation to see if any employment would be available, and Plaintiff "stated

that he tried this 'a long time ago' but that he 'doesn't want to do anything (work) that would hurt my Social Security case.'" *Id*. The ALJ's second citation to the record addresses Plaintiff's noncompliance with physical therapy in May and June of 2013. Tr. 32. An August 2013 Discharge Summary states the following:

> Jason attended 6 appointments and cancelled of [*sic*.] no showed for 5 appointments. He did work hard during the appointments he attended. He cancelled or no showed for his last 3 appointments. At the time of his last scheduled appointment on 7/16/13, he stated he would call us to schedule further appointments. We have not heard from him, he will be considered discharged at this time.

Tr. 587. Plaintiff's explanation for his lapse in treatment from 2012 to 2013 and again in 2015 fails to account for the ALJ's findings that he failed to follow the recommendations of his counselor in October of 2014 and his failure to complete physical therapy in May and June of 2013. The evidence the ALJ cited supports her conclusion that Plaintiff was noncompliant with treatment. Therefore, this reason meets the specific, clear and convincing standard.

In conclusion, the ALJ provided enough specific, clear and convincing reasons to support her determination that Plaintiff's symptoms statements were less than fully credible. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 3. Step Five

Plaintiff asserts that the ALJ's finding that he could perform light work was contrary to the evidence, including the opinions of the treating and examining sources. ECF No. 22 at 20-21.

This step five argument is premised on Plaintiff raising successful

challenges to the ALJ's treatment of the opinion evidence in the record. ECF No. 22 at 20-21. The Court has declined to disturb the weight the ALJ assigned the opinion evidence. *See supra*. Therefore, Plaintiff's step five challenge fails.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED June 15, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE